jar/lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) Case No. 10-40067-JAR |
| DANIAL GENE MEADE, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Danial Meade's Motion for Judgment of Acquittal filed pursuant to Fed. R. Crim. P. 29 (Doc. 94). The government has responded and the Court is prepared to rule. For the reasons explained in detail below, defendant's motion is denied.

**I.  Background**

The Superseding Indictment in this case charged defendant Danial Meade with one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g), one count of violent felon in possession of body armor in violation of 18 U.S.C. § 931(a), and a forfeiture allegation. A Second Superseding Indictment was filed on October 13, 2010, adding an additional charge of felon in possession of ammunition in violation of § 922(g). Defendant stood trial beginning on February 16, 2011. At the close of the government's evidence and again, upon the close of defendant's case before the charges were submitted to the jury,[1] defendant orally moved for

---

[1] Defendant did not present any evidence in his defense.

judgment of acquittal, arguing that the evidence was insufficient to sustain a conviction on the counts in the Second Superseding Indictment. The Court took the motion under advisement and submitted the case to the jury.

The jury returned a guilty verdict against defendant on all counts.[2] Defendant did not request to have the jury determine the forfeiture issue, and after an evidentiary hearing, the Court found that the property identified in the Second Superseding Indictment was subject to forfeiture pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c).[3] Following the verdict, defendant renewed his motion for judgment of acquittal based on the sufficiency of the evidence.

**II.    Discussion**

On a motion under Fed. R. Crim. P. 29, the court may not weigh the evidence or assess the credibility of the witnesses.[4] "Rather, the Court must 'view the evidence in the light most favorable to the government and then determine whether there is sufficient evidence from which a jury might properly find the accused guilty beyond a reasonable doubt.'"[5] "Acquittal is proper only if the evidence implicating defendant is nonexistent or is 'so meager that no reasonable jury could find guilt beyond a reasonable doubt.'"[6] Accordingly, as long as the jury's inferences and conclusions are reasonable, the court will not disrupt the verdict.[7] A motion for acquittal at the

---

[2](Doc. 89.)

[3](Doc. 93.)

[4]*United States v. Parker*, 521 F. Supp. 2d 1174, 1176 (D. Kan. 2007).

[5]*Id.* (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir.1982)).

[6]*Id.* (quoting *White*, 673 F.2d at 301).

[7]*United States v. Dazey*, 403 F.3d 1147, 1159 (10th Cir. 2005) (citing *United States v. Rahserparian*, 231 F.3d 1257, 1262 (10th Cir. 2000)).

close of the government's evidence looks only to the evidence adduced during the government's presentation of its case.[8]

In order to prove a § 922(g)(1) violation, the government must establish the following elements beyond a reasonable doubt: (1) that the defendant was previously convicted of a felony; (2) that the defendant thereafter knowingly possessed a firearm or ammunition; and (3) that the possession was in or affecting interstate commerce.[9] Similarly, in order to prove a § 931(a) violation, the government must establish beyond a reasonable doubt (1) that the defendant knowingly possessed body armor; (2) that the defendant was previously convicted of a violent felony offense; and (3) that the possession was in or affecting interstate commerce.

The evidence at trial is summarized as follows. Defendant stipulated to his prior conviction and the interstate nexus of the firearms, ammunition and body armor charged in this case.[10] The issue at trial was whether defendant possessed the firearm, ammunition and body armor. By his own admission, on March 5, 2010 in Salina, Kansas, defendant was involved in an altercation with individuals at a house in the 500 block of South 12th Street. These men shot 9mm weapons at defendant repeatedly, and defendant fled in his car. They continued to shoot at him as he drove away on 12th Street, in a silver Hyundai. A neighbor several houses away on 12th Street heard the gunfire, and from his elevated front porch, watched the silver Hyundai drive past his house on 12th Street in the line of still more gunfire. Despite being the target of gunfire, defendant drove by the house several times, subjecting himself to still more gunfire,

---

[8]Fed. R. Crim. P. 29; *United States v. Delgado-Uribe*, 363 F.3d 1077, 1082 n.3 (10th Cir. 2004).

[9]*United States v. Taylor*, 113 F.3d 1136, 1144-46 (10th Cir. 1997); *see also United States v. Heckard*, 238 F.3d 1222, 1228-29 (10th Cir. 2001).

[10](Doc. 88, Instruction Nos. 14, 18, 22.)

until, a few minutes later, he abandoned his bullet-ridden car, with three flat tires, parking it in front of a house on nearby Prescott Street. This is largely the account defendant gave investigators of the incident up to that point, and it is largely supported by the evidence. Defendant is charged with possessing a firearm, ammunition and a body armor vest during this incident. Defendant's denial of knowledge or possession of those items, however, is not borne out by the evidence.

After the first burst of gunfire at the house on 12th Street, an occupant of the house made a 911 call. The first officer responded to the scene six minutes later and within minutes after that more officers responded to the neighborhood, in search of defendant. Within minutes, they recovered evidence strung along a path that defendant took from the time he left his car in front of the house on Prescott Street, until the time he was apprehended several blocks away, in an alley behind nearby College Street.

Some of the ammunition charged in this case was recovered from defendant's car shortly after officers responded to the scene. Twenty rounds of this 7.62 caliber ammunition was found inside a glove that was laying on the driver's floorboard of defendant's car. Defendant denied any knowledge of the ammunition, but viewed in the light most favorable to the government, defendant had to know about this bulky, ammunition-filled glove on the floorboard of the car he was driving. The empty matching glove was also found in defendant's car. There were no other passengers in defendant's car during this incident.

And, not long after officers responded to the scene, the body armor vest was found on a barbecue grill in the backyard of the house just behind the house on Prescott Street where defendant left his car. A young teen boy who lived in the house on Prescott Street gave key

4

eyewitness testimony. The boy testified that he saw a man wearing a black leather jacket and all dark clothing leaving the (defendant's) car, running past his front door and into the back yard. The boy hid in his brother's room for a few minutes, but then looked out the back window of his house, where he saw this same man jumping the fence, and then discarding some object on the neighbor's grill. The boy then saw the man begin to walk up the street "like nothing happened." The boy attempted to follow the man on foot, but soon abandoned that venture. Viewed in the light most favorable to the government, this man who left the body armor vest on the grill was defendant. Moreover, the nylon carrying case for this body armor was recovered from the defendant's car.

Furthermore, viewed in the light most favorable to the government, this same man possessed the firearm that is charged in the Indictment. The firearm was recovered six weeks later, when the homeowner was tearing down a shed in the back yard of the boy's house, the house on Prescott Street. The homeowner found the firearm underneath a pallet on the floor of the shed. Two things tie this firearm to defendant. First, the firearm was recovered along the path of defendant's foot journey that day. The evidence suggests he had time to secrete the firearm under the pallet in the shed, during the brief time that the boy was hiding in his brother's room, and before the boy looked out the back window just in time to see the man leap over the back yard fence. More significantly, however, was that this firearm contained the same type of 7.62 caliber ammunition recovered from the glove in defendant's car. The ammunition was not your garden variety ammunition. An ATF expert testified that he had never seen such ammunition in the United States; it is manufactured in Russia, and is not commonly used here.

Moreover, officers recovered several pieces of dark clothing that were discarded along

5

the path of defendant's foot journey that day.  These pieces of discarded clothing explain why the boy saw defendant wearing all dark clothing as he ran from his car, yet defendant was wearing a white shirt and jeans when officers apprehended him in an alley a few blocks away from the house on Prescott.  The boy specifically recalled seeing the man wearing a black jacket; a black jacket is one of the discarded clothing items that officers recovered.

Significantly, some of these discarded clothing items are tied to defendant.  Along the back side of a garage on College Street, in close proximity to the alley where defendant was apprehended, officers recovered a black jacket, gray t-shirt and dark baseball cap.  In the pockets of the black jacket they found two sets of keys, including a set of keys with a Snoopy key ring.  In a jailhouse monitored phone conversation the next day, defendant referenced this Snoopy key ring when discussing with his girlfriend where they keys were located.  In the pocket of the black jacket officers also recovered a Motorola cell phone back plate.  This matched the Motorola cell phone recovered from defendant's vehicle; the back plate of the cell phone was missing.

Finally, viewed in the light most favorable to the government, defendant's statements to officers explaining his possession of certain items, are simply not credible.  Defendant told officers that after he returned to the scene of the gunfire, he chased the perpetrators on foot, even though defendant claimed he was himself unarmed.  Defendant claimed that during that chase the perpetrators dropped items, which defendant took the time to pick up, despite being the target of their continued gunfire.  This is defendant's implausible explanation for why officers recovered from his car the nylon body armor carrying case and the glove containing the ammunition, even while disclaiming possession or knowledge of the body armor vest and

6

ammunition.

Viewed in the light most favorable to the government, the Court finds sufficient evidence from which the jury could find defendant guilty beyond a reasonable doubt on all counts. The evidence presented by the government linked defendant to the firearm, ammunition and body armor. While the evidence in this case is circumstantial, it cannot be characterized as either nonexistent or meager.[11] Accordingly, defendant's motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Judgment of Acquittal (Doc. 94) is DENIED.

**IT IS SO ORDERED.**

Dated: April 22, 2011

    S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[11] *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982).